## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DENISE HOBBS | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS J. DART, Sheriff of | ) | |
| Cook County, in his official capacity, | ) | |
| and COOK COUNTY, ILLINOIS | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Denise Hobbs, complains as follows against Defendants, Thomas J. Dart, Sheriff of Cook County, in his official capacity, and Cook County, Illinois:

### I.    PARTIES

1.    Plaintiff is a 59-year-old African American woman who resides in Cook County, Illinois. Plaintiff was formerly employed by Sheriff Thomas J. Dart.

2.    Defendant Thomas J. Dart is the Sheriff of Cook County, Illinois and is vested with all the powers and responsibilities vested in him under Division 3-6 of the Counties Code, 55 ILCS 5/3-6001-6040, including the appointment of deputies as court security officers. Defendant Dart is responsible for all acts, omissions, and conduct attributed in this Complaint to "the Cook County Sheriff's Office" ("CCSO"). Defendant Dart is sued in his official capacity as Sheriff of Cook County.

3. At all times relevant, Defendant Dart was Plaintiff's "employer" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b) ("Title VII") and the Illinois Human Rights Act, 775 ILCS 5/2-101(B) ("IHRA"), and a unit of county government under the Illinois Civil Rights Act, 740 ILCS 23/5 ("ICRA").

4. Defendant County of Cook ("Cook County" or "the County") is a body politic and corporate, organized under the Counties Code, 55 ILCS 5/1-1001-5/7-1001. Cook County has indemnification obligations for wrongful acts committed by the Sheriff of Cook County, *see* 745 ILCS 10/1-202 and 9-102, and is named in its capacity as indemnitor.

## II.  JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 2000e-5(f)(3) (Title VII), 29 U.S.C. § 626(c) (ADEA), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1443 (civil rights).

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. 17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims alleged occurred in this District.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On August 14, 2019, Plaintiff filed a complaint of unlawful sex, race, and age discrimination against the CCSO in the Illinois Department of Human

Rights ("IDHR"). Plaintiff's IDHR complaint was cross-filed with the Equal

Employment Opportunity Commission ("EEOC").

9.      On August 9, 2020, Plaintiff received notice from the IDHR of her right

to commence a civil action in court under the Illinois Human Rights Act.

10.     On August 19, 2020, Plaintiff received notice from the EEOC of her

right to commence a civil action in court under the Age Discrimination in

Employment Act.

11.     On September 10, Plaintiff received notice from the U.S. Department

of Justice ("USDOJ") of her right to commence a civil action in court under Title VII.

12.     Plaintiff filed this Complaint within 90 days of her receipt of the

notices from the IDHR, EEOC, and USDOJ.

## IV.     PRINCIPAL FACTUAL ALLEGATIONS

13.     At all times relevant, Plaintiff was a sworn sheriff's deputy and state-

certified peace officer, employed by the CCSO.

14.     In April 2007, the CCSO hired Plaintiff to train as a correctional

officer, and she entered into the CCSO's correctional officer training academy. She

successfully completed all training requirements, passed the deputy sheriff state

exam, and graduated from training as a correctional officer in July 2007.

15.     From July 2007 until June 2019, Plaintiff was assigned to the Cook

County Department of Corrections ("CCDOC"). Her duties as a correctional officer

revolved around the security and safety of detainees at the Cook County Jail.

16.     In February 2019, Plaintiff applied for a transfer from the CCDOC to the CCSO's Court Services Division ("Courts"), to work as a courthouse deputy.

17.     The right to transfer to Courts is governed by a collective bargaining agreement ("CBA"). Under the CBA, the right to transfer is based upon seniority.

18.     On June 10, 2019, Plaintiff received notification that her application to transfer to Courts was accepted. She transferred to Courts on June 24, 2019.

19.     On June 24, 2019, Plaintiff entered into training with other deputy sheriffs transferring to Courts from the CCDOC. Because seniority rights govern such transfers, Plaintiff and other deputy sheriffs in training had already devoted many years of service to the CCSO as correctional officers, protecting the public by ensuring the security of detainees at the Cook County Jail.

20.     In July 2019, instructors overseeing the training of deputy sheriffs transferring to Courts repeatedly administered an unlawful physical fitness test (which CCSO refers to as the "physical agility test" or "PAT").

21.     The CCSO was well aware of the conduct of the training instructors in administering the PAT to deputy sheriffs in training for Courts.

22.     The PAT is a three-event test consisting of sit ups, a bench press, and a timed 1.5-mile run. These activities in no way resemble, relate to, or measure a deputy sheriff's ability to perform the job duties of a courthouse deputy.

23.     The PAT has a statistically significant adverse impact on African Americans, women, and deputy sheriffs over the age of 40.

24.    Put differently, African Americans, women, and deputy sheriffs over the age of 40 are significantly more likely to fail the PAT.

25.    The CCSO's use of the PAT, which bears no relation to the job duties of a courthouse deputy and results in the disproportionate rejection of African Americans, women, and older deputy sheriffs for positions as courthouse deputies, constitutes unlawful discrimination and a civil rights violation.

26.    On August 1, 2019, the CCSO rescinded Plaintiff's transfer to Courts because, and only because, she failed the PAT. Plaintiff was returned to her former post at the Cook County Jail.

27.    Plaintiff could not return to the Jail. As a correctional officer in the Jail, she had been chronically subjected to a sexually hostile work environment resulting from the CCOS's acquiescence in extreme forms of sexual harassment by male detainees directed at Plaintiff and other women employed in the Jail. Detainees in the Jail exposed their genitalia to correctional officers and other women working in the Jail; brazenly masturbated in front of them, including, at times, aiming ejaculations at them; groped and grabbed them; subjected them to sexually degrading insults and slurs; and threatened them with sexual violence.

28.    As a correctional officer in the Jail, Plaintiff was forced to endure a work environment permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive and so consistently traumatizing as to make the Jail an objectively abusive and hostile workplace for Plaintiff.

29.     Plaintiff could not return to work in that sexually hostile environment without serious jeopardy to her physical and mental health. Her physician adamantly opposed her return to the Jail. The working conditions in the Jail, and specifically the sexually hostile work environment resulting from CCSO's acquiescence in detainee sexual harassment, were intolerable. Because the CCSO refused to permit Plaintiff to work in Courts, she determined that she has no option other than to retire from the CCSO. She retired on September 1, 2019.

30.     The CCSO's conduct in relying on a discriminatory and invalid physical fitness test (the PAT) to fail Plaintiff and other deputy sheriffs from courthouse deputy training and return them to the CCDOC violated Title VII, the Age Discrimination in Employment Act, the Illinois Human Rights Act, and the Illinois Civil Rights Act, which collectively prohibit the use of employment tests that have an adverse impact based on race, sex, and age unless they are correlated with important job duties. The PAT used by the CCSO does not measure or predict the job duties of a courthouse deputy.

31.     When the CCSO used the PAT to reject deputy sheriffs from Courts, it knew that African Americans, women, and older deputy sheriffs were significantly more likely to fail. The CCSO's use of the PAT despite its known adverse impact on African Americans, women, and older deputy sheriffs was deliberate, reckless, intentional, and indifferent to their civil rights.

32.     In fact, before the CCSO administered the PAT to Plaintiff and other deputy sheriffs transferring to Courts, an administrative law judge (ALJ) with the

Illinois Labor Relations Board ("ILRB") issued an order affirming an arbitrator's finding that the CCSO's use of the PAT constituted an unfair labor practice under the collective bargaining agreement between the CCSO and Local 700 of the International Brotherhood of Teamsters. See Exhibit A at 7-34. On July 9, 2019, at a public meeting in Chicago, the local panel of the ILRB adopted the ALJ's findings and orders, including the order that the CCSO must "cease and desist" from requiring correctional officers transferring to Courts "take or pass a PAT at any time." *Id.* at 1-6. But the CCSO proceeded to brazenly violate that order by requiring Plaintiff and other officers in the courthouse deputy class to take and pass the PAT.

33.     On August 13, 2019, Nicholas Scouffas, CCSO's general counsel, and Katherine Christy, an assistant general counsel, received the email attached to this Complaint as Exhibit B. The email, from Plaintiff's counsel, attached Plaintiff's IDHR complaint and warned that litigation would be filed if the CCSO did not remedy the discrimination by returning Plaintiff to Courts. The email describes the legal claims arising from the CCSO's use of the PAT and cites a federal court decision finding that the use of a 1.5 mile run to select correctional officers violates Title VII of the Civil Rights Act. Mr. Scouffas and Ms. Christy did not acknowledge receipt or respond to the email.

34.     The CCSO's knowing violation of the ILRB's order and conscious disregard of precedent further reflect that its conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

35.     As a remedy for the CCSO's discriminatory and unlawful conduct, Plaintiff seeks a finding that the CCSO's use of the PAT to reject her for employment as a courthouse deputy violated her legal and civil rights; monetary damages associated with her forced retirement; compensatory damages for her additional monetary losses, humiliation, and other emotional distress; other make-whole legal and equitable relief; and her reasonable attorney's fees and costs, including expert witness fees and other litigation expenses.

## V.     ADDITIONAL FACTUAL ALLEGATIONS

36.     The CCDOC conducted the courthouse deputy Training Academy that Plaintiff participated in from June 24, 2019 until on or around August 2, 2019. The CCSO referred to that Academy as the "19-02" class.

37.     A total of 25 deputy sheriffs entered the 19-02 class.

38.     The demographic composition of the class was as follows:

a.  15 men—3 African-Americans and 12 others

b.  10 women—8 African-Americans and 2 others

Thus, 40% of the class were women and 60% were men; and 44% of the class were African Americans, and 56% were not African Americans. On information and belief, all class members were between the ages of 30 and 59.

39.     The Training Academy included physical fitness training, classroom instruction, drills, uniform inspection, various other activities, and the PAT.

40.     Executive Director Marie Rangel ran the Training Academy. Officer Erica Pepper and Sergeant Maria Utreras served as training coordinators,

overseeing daily operations. Various other training instructors led physical fitness training.

41.     When informed that deputy sheriffs transferring to Courts would be required to take and pass the PAT, Plaintiff was surprised and confused. She knew that Local 700 of the International Brotherhood of Teamsters, the bargaining unit for correctional officers, had successfully challenged the CCSO's use of the PAT to disqualify correctional officers from transfer to Courts. She knew that the CCSO had been prohibited from administering the PAT to officers in her class, and she assumed that Maria Rangel, who ran the Training Academy, knew this as well.

42.     Each of the three PAT events had a minimum passing requirement. If a deputy sheriff failed any of the three events, they failed the PAT.

43.     The PAT's minimum standards were: 24 sit ups in one minute, a bench press of at least 52% of the deputy's body weight, and a 1.5 mile run completed in 16 minutes and 52 seconds or less. See Exhibit C.

44.     The CCSO did not norm the PAT's minimum passing standards by sex or age. By failing to norm the test, the CCSO was demanding that female deputies and older deputies demonstrate a higher level of physical fitness than male deputies and younger deputies. That is a scientific fact, reflecting physiological differences between women and men, and between younger and older human beings.

45.     Imposing more rigorous physical fitness requirements on female deputies constituted unlawful sex discrimination.

9

46.     Imposing more rigorous physical fitness requirements on older deputies constituted unlawful age discrimination.

47.     On or around July 29, 2019, Sergeant Utreras administered the PAT to Plaintiff and other deputy sheriffs in training for Courts. Eight out of 25 deputies failed at least one PAT event. Plaintiff failed the 1.5 mile run and the sit up event.

48.     On or around July 31, 2019, Sergeant Utreras re-administered the PAT to Plaintiff and the other seven deputies who had failed it. Plaintiff passed the sit up test. She also completed the 1.5 mile run but was told that her time exceeded the 16 minute 52 second cutoff.

49.     After failing the 1.5-mile run, Plaintiff was directed to sign paperwork acknowledging her time. By signing that document, Plaintiff did not consent to the use of the PAT to reject her from employment as a courthouse deputy.

50.     After all eight deputies were re-tested on the PAT, Officer Pepper directed the six who had failed, including Plaintiff, to report to human resources.

51.     On information and belief, all six deputy sheriffs who were re-tested on the PAT and directed to report to human resources failed the 1.5 run. Some deputies also failed other test events (e.g. the bench press).

52.     The demographics of the rejected deputy sheriffs were as follows:

a.  1 African-American man over age 40

b.  4 African-American women over age 40 (including Plaintiff)

c.  1 Caucasian man over age 40

53.     The PAT had a statistically significant adverse impact based upon race, sex, and age. After re-administration of the PAT, African Americans constituted 44% of the 19-02 class but 83% of the class members who failed. Women constituted 40% of the 19-02 class but 66.7% of the class members who failed. And while Plaintiff does not know the exact composition of the class by age, there were a number of class members under age 40, but none failed the PAT after it was re-administered.

54.     On July 31, 2019, the six deputies who failed the PAT, including Plaintiff, reported to human resources and met with Rebecca Rierson, the CCSO's human resources director. The deputies explained that they had been directed to meet with her because they had failed the 1.5-mile PAT test event. Ms. Rierson expressed confusion. She stated that she did not believe the 1.5 mile run test was necessary for a position as a courthouse deputy. She then dismissed them and told them to return after lunch.

55.     When they returned, Ms. Rierson said she had spoken to CCSO's legal department and Plaintiff and the other five deputies would be sent back to their previous assignments at the CCDOC. Ms. Rierson did not make any statements defending the use of the PAT as a selection device for courthouse deputies.

56.     On July 31, 2019, Jeff Johnsen, the CCDOC's first assistant executive director of operations, issued a personnel memorandum transferring Plaintiff and the five other deputy sheriffs who failed the PAT back to the CCDOC effective August 1, 2019.

57.     On August 13, 2019, Plaintiff's counsel sent the email attached to this Complaint as Exhibit B to General Counsel Nicholas Scouffas and Assistant General Counsel Katherine Christy, attaching an Illinois Department of Human Rights complaint that Plaintiff's counsel indicated would be filed if the deputy sheriffs were returned to the CCDOC. Mr. Scouffas and Ms. Christy did not acknowledge receipt or respond to the email.

58.     That very same day, the ILRB issued its written order documenting its order issued publicly on July 9, 2019, including the order that the CCSO cease and desist from using the PAT on correctional officers transferring from the CCDOC to Courts.

59.     On August 14, 2019, Plaintiff filed a sworn complaint of sex, race, and age discrimination with the Illinois Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission.

60.     Despite receipt of the ILRB's order and a copy of Plaintiff's IDHR complaint, the CCSO did not offer to return Plaintiff to Courts. Instead, she remained assigned to the CCDOC. However, she did not actually return to work at the Jail because it would have been medically dangerous to do so.

61.     Plaintiff had no choice other than to retire from the CCSO. She could not return to the sexually hostile work environment at the Jail. On September 1, 2020, Plaintiff retired from the CCSO.

62.     On October 7, 2019, around five weeks after Plaintiff's forced retirement, Joseph Bellettiere, executive director of Courts, issued a memorandum

stating that the other five deputy sheriffs who had been transferred back to the CCDOC because they failed the PAT would be transferred to Courts effective October 13, 2019, "as a result of" their "completing" courthouse deputy training. None of these deputies retook or passed the PAT in order to "complete" training.

63. CCSO did not invite Plaintiff to return to work in Courts. As a consequence, she has remained on forced retirement, earning a fraction of the wages she would have earned as a courthouse deputy.

64. The CCSO's conduct was deliberate, reckless, intentional, and indifferent to the Plaintiff's civil rights.

## COUNT I
### DISPARATE IMPACT – RACE DISCRIMINATION
### TITLE VII, 42 U.S.C. § 2000e
### (Against Defendant Dart, in His Official Capacity)

65. Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

66. Title VII provides that it is unlawful for an employer to use an employment practice that causes a disparate impact on the basis of race unless the employer can demonstrate that the challenged practice is job related for the position and consistent with business necessity. 42 U.S.C. § 2000e-2(k).

67. The PAT had an adverse impact on African American deputy sheriffs transferring to Courts.

68. Despite CCSO's representation to deputy sheriffs transferring to Courts, neither the PAT nor any of its three test events "is a scientifically valid

13

test." The PAT does not relate to, correlate with, or in any way predict the ability of deputy sheriffs to perform the job duties of a courthouse deputy.

69.     On information and belief, the CCSO failed to conduct any scientifically acceptable job analysis of the courthouse deputy position or to engage a qualified industrial organizational psychologist or other expert to validate the PAT or any of its three test events.

70.     Also, or in the alternative, there were equally valid, less discriminatory alternatives available to the CCSO to use to assess the minimum physical fitness required of courthouse deputies, but CCSO failed to consider or adopt them. For example, the CCSO could have but refused to norm the PAT by age and sex, which would have reduced or eliminated its adverse impact.

71.     By the actions set forth above, the CCSO violated 775 ILCS 5/2-102 by engaging in disparate impact discrimination against Plaintiff on the basis of race.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

## COUNT II
### DISPARATE IMPACT -- RACE DISCRIMINATION
### ILLINOIS HUMAN RIGHTS ACT
### (Against Defendant Dart, in His Official Capacity)

72.     Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

73.     The Illinois Human Rights Act provides that it is a civil rights violation for any employer "to refuse to hire, to segregate, … or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102.

74.     "Unlawful discrimination" under the Illinois Human Rights Act includes disparate impact discrimination on the basis of race.

75.     The PAT had an adverse impact on African Americans transferring to Courts.

76.     Despite CCSO's representation to deputy sheriffs transferring to Courts, neither the PAT nor any of its three test events "is a scientifically valid test." The PAT does not relate to, correlate with, or in any way predict the ability of deputy sheriffs to perform the job duties of a courthouse deputy.

77.     On information and belief, the CCSO failed to conduct any scientifically acceptable job analysis of the courthouse deputy position or to engage a qualified industrial-organizational psychologist or other expert to validate the PAT or any of its three test events.

15

78. Also, or in the alternative, there were equally valid, less discriminatory alternatives available to the CCSO to use to assess the minimum physical fitness required of courthouse deputies, but CCSO failed to consider or adopt them. For example, the CCSO could have but refused to norm the PAT by age and sex, which would have reduced or eliminated its adverse impact.

79. By the actions set forth above, Defendant violated 775 ILCS 5/2-102 by engaging in disparate impact discrimination against Plaintiff on the basis of race.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

<u>COUNT III</u>
**DISPARATE IMPACT – RACE DISCRIMINATION
ILLINOIS CIVIL RIGHTS ACT
(Defendant Dart, in His Official Capacity)**

80. Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

81. By the actions set forth above, the CCSO violated 740 ILCS 23/5(a)(2), which bars units of state, county, and local government, including the CCSO, from "utiliz[ing] criteria or methods of administration that have the effect of subjecting

16

individuals to discrimination because of their race[.]" The CCSO violated this provision by using the PAT, which had the effect of subjecting Plaintiff to discrimination because of her race.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

**COUNT IV**
**DISPARATE TREATMENT – RACE DISCRIMINATION**
**TITLE VII, 42 U.S.C. § 2000e**
**(Defendant Dart, in His Official Capacity)**

82. Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

83. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, provides that it is an "unlawful employment practice for an employer… to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…" 42 U.S.C. § 2000e-2(a).

84. By the actions described above, the CCSO took adverse employment actions against Plaintiff and intentionally discriminated against her on the basis of her race, in violation of Title VII.

85. The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

WHEREFORE, Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, and that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to full and fairly compensate her for her injuries. The award should include compensation Plaintiff's monetary damages, humiliation, mental anguish and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

### COUNT V
### DISPARATE TREATMENT – RACE DISCRIMINATION
### ILLINOIS HUMAN RIGHTS ACT
### (Defendant Dart, in His Official Capacity)

86. Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

87. By the actions described above, the CCSO took adverse employment actions against Plaintiff and intentionally discriminated against her the basis of her race in violation of 775 ILCS 5/2-102.

88. The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

18

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

**COUNT VI**
**DISPARATE TREATMENT – RACE DISCRIMINATION**
**ILLINOIS CIVIL RIGHTS ACT**
**(Defendant Dart, in His Official Capacity)**

89.     Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

90.     By the actions set forth above, the CCSO violated 740 ILCS 23/5(a)(1), which bars units of state, county, and local government, including the CCSO, from "exclud[ing] a person from participation in, deny[ing] a person the benefits of, or subject[ing] a person to discrimination under any program or activity on the grounds of that person's race[.]"

91.     The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional

19

officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

**COUNT VII**
**DISPARATE IMPACT -- SEX DISCRIMINATION**
**TITLE VII, 42 U.S.C. § 2000e**
**(Against Defendant Dart, in His Official Capacity)**

92.     Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

93.     Title VII provides that it is unlawful for an employer to use an employment practice that causes a disparate impact on the basis of sex unless the employer can demonstrate that the challenged practice is job related for the position and consistent with business necessity. 42 U.S.C. § 2000e-2(k).

94.     The PAT had an adverse impact on female deputy sheriffs transferring to Courts.

95.     Despite CCSO's representation to deputy sheriffs transferring to Courts, neither the PAT nor any of its three test events "is a scientifically valid test." The PAT does not relate to, correlate with, or in any way predict the ability of deputy sheriffs to perform the job duties of a courthouse deputy.

96.     On information and belief, the CCSO failed to conduct any scientifically acceptable job analysis of the courthouse deputy position or to engage

20

a qualified industrial organizational psychologist or other expert to validate the PAT or any of its three test events.

97.     Also, or in the alternative, there were equally valid, less discriminatory alternatives available to the CCSO to use to assess the minimum physical fitness required of courthouse deputies, but CCSO failed to consider or adopt them. For example, the CCSO could have but refused to norm the PAT by age and sex, which would have reduced or eliminated its adverse impact.

98.     By the actions set forth above, the CCSO violated 775 ILCS 5/2-102 by engaging in disparate impact discrimination against Plaintiff on the basis of sex.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

**COUNT VIII**
**DISPARATE IMPACT -- SEX DISCRIMINATION**
**ILLINOIS HUMAN RIGHTS ACT**
**(Against Defendant Dart, in His Official Capacity)**

99.     Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

100. The Illinois Human Rights Act provides that it is a civil rights violation for any employer "to refuse to hire, to segregate, … or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102.

101. "Unlawful discrimination" under the Illinois Human Rights Act includes disparate impact discrimination on the basis of sex.

102. The PAT had an adverse impact on female deputy sheriffs transferring to Courts.

103. Despite CCSO's representation to deputy sheriffs transferring to Courts, neither the PAT nor any of its three test events "is a scientifically valid test." The PAT does not relate to, correlate with, or in any way predict the ability of deputy sheriffs to perform the job duties of a courthouse deputy.

104. On information and belief, the CCSO failed to conduct any scientifically acceptable job analysis of the courthouse deputy position or to engage a qualified industrial-organizational psychologist or other expert to validate the PAT or any of its three test events.

105. Also, or in the alternative, there were equally valid, less discriminatory alternatives available to the CCSO to use to assess the minimum physical fitness required of courthouse deputies, but CCSO failed to consider or adopt them. For

example, the CCSO could have but refused to norm the PAT by age and sex, which would have reduced or eliminated its adverse impact.

106. By the actions set forth above, Defendant violated 775 ILCS 5/2-102 by engaging in disparate impact discrimination against Plaintiff on the basis of sex.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

## COUNT IX
### DISPARATE IMPACT – SEX DISCRIMINATION
### ILLINOIS CIVIL RIGHTS ACT
### (Defendant Dart, in His Official Capacity)

107. Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

108. By the actions set forth above, the CCSO violated 740 ILCS 23/5(a)(2), which bars units of state, county, and local government, including the CCSO, from "utilize[ing] criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their … gender." The CCSO violated this provision by using the PAT, which had the effect of subjecting Plaintiff to discrimination because of her gender.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

## COUNT X
### DISPARATE TREATMENT – SEX DISCRIMINATION
### TITLE VII, 42 U.S.C. § 2000e
### (Defendant Dart, in His Official Capacity)

109. Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

110. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, provides that it is an "unlawful employment practice for an employer… to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex[.]" 42 U.S.C. § 2000e-2(a).

111. By the actions described above, the CCSO took adverse employment actions against Plaintiff and intentionally discriminated against her on the basis of her sex, in violation of Title VII.

112. The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

24

WHEREFORE, Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, and that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to full and fairly compensate her for her injuries. The award should include compensation Plaintiff's monetary damages, humiliation, mental anguish and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

**COUNT XI**
**DISPARATE TREATMENT – SEX DISCRIMINATION**
**ILLINOIS HUMAN RIGHTS ACT**
**(Defendant Dart, in His Official Capacity)**

113.    Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

114.    By the actions described above, the CCSO took adverse employment actions against Plaintiff and intentionally discriminated against her the basis of her sex in violation of 775 ILCS 5/2-102.

115.    The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her

25

for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

**COUNT XII**
**DISPARATE TREATMENT – SEX DISCRIMINATION**
**ILLINOIS CIVIL RIGHTS ACT**
**(Defendant Dart, in His Official Capacity)**

116.    Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

117.    By the actions set forth above, the CCSO violated 740 ILCS 23/5(a)(1), which bars units of state, county, and local government, including the CCSO, from "exclud[ing] a person from participation in, deny[ing] a person the benefits of, or subject[ing] a person to discrimination under any program or activity on the grounds of that person's … gender[.]"

118.    The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

26

## COUNT XIII
## DISPARATE IMPACT – AGE DISCRIMINATION
## ADEA, 29 U.S.C. § 623(a)
## (Defendant Dart, in His Official Capacity)

119.    The Age Discrimination in Employment Act provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" or "to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]" 29 U.S.C. § 623(a).

120.    In addition to prohibiting intentional discrimination on the basis of age, the ADEA prohibits unlawful disparate impact discrimination.

121.    The PAT had an adverse impact on deputy sheriffs over the age of 40 who were transferring to Courts.

122.    Despite CCSO's representation to deputy sheriffs transferring to Courts, neither the PAT nor any of its three test events "is a scientifically valid test." The PAT does not relate to, correlate with, or in any way predict the ability of deputy sheriffs to perform the job duties of a courthouse deputy.

123.    On information and belief, the CCSO failed to conduct any scientifically acceptable job analysis of the courthouse deputy position or to engage a qualified industrial-organizational psychologist or other expert to validate the PAT or any of its three test events.

27

124.    CCSO cannot demonstrate that the administration of the PAT is based on a reasonable factor other than age.

125.    Also, in the alternative, there were equally valid, less discriminatory alternatives available to the CCSO to use to assess the minimum physical fitness level required of courthouse deputies, but CCSO failed to consider or adopt them. For example, the CCSO could have but refused to norm the PAT by age and sex, which would have reduced or eliminated its adverse impact.

126.    By actions set forth above, Defendant violated the ADEA, 29 USC § 623(a), by discriminating against Plaintiff because of her age.

WHEREFORE, Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, and that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to full and fairly compensate her for her injuries. The award should include compensation Plaintiff's monetary damages, humiliation, mental anguish and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

## COUNT XIV
### DISPARATE IMPACT – AGE DISCRIMINATION
### ILLINOIS HUMAN RIGHTS ACT
### (Defendant Dart, in His Official Capacity)

127.    Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

128.     The Illinois Human Rights Act provides that it is a civil rights violation for any employer "to refuse to hire, to segregate, … or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102.

129.     "Unlawful discrimination" under the Illinois Human Rights Act includes disparate impact discrimination on the basis of age.

130.     The PAT had an adverse impact on deputy sheriffs over the age of 40 who were transferring to Courts.

131.     Despite CCSO's representation to deputy sheriffs transferring to Courts, neither the PAT nor any of its three test events "is a scientifically valid test." The PAT does not relate to, correlate with, or in any way predict the ability of deputy sheriffs to perform the job duties of a courthouse deputy.

132.     On information and belief, the CCSO failed to conduct any scientifically acceptable job analysis of the courthouse deputy position or to engage a qualified industrial-organizational psychologist or other expert to validate the PAT or any of its three test events.

133.     Also, or in the alternative, there were equally valid, less discriminatory alternatives available to the CCSO to use to assess the minimum physical fitness required of courthouse deputies, but CCSO failed to consider or adopt them. For

example, the CCSO could have but refused to norm the PAT by age and sex, which would have reduced or eliminated its adverse impact.

134.    By the actions set forth above, Defendant violated 775 ILCS 5/2-102 by engaging in disparate impact discrimination against Plaintiff on the basis of age.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

## COUNT XV
### DISPARATE TREATMENT – AGE DISCRIMIATION
### ADEA, 29 USC § 623(a)
### (Defendant Dart, in His Official Capacity)

135.    Plaintiff restates, realleges and incorporates the allegations above as if fully set forth herein.

136.    The Age Discrimination in Employment Act ("ADEA"), provides that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).

137.    Plaintiff was over forty (40) years of age at the time of the CCSO's illegal administration of the PAT.

138.    By the actions described above, the CCSO took adverse employment actions against Plaintiff and intentionally discriminated against her on the basis of her age, in violation of the ADEA, 29 U.S.C. § 623(a).

139.    The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

WHEREFORE, Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, and that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to full and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

## COUNT XVI
### DISPARATE TREATMENT – AGE DISCRIMIATION
### ILLINOIS HUMAN RIGHTS ACT
### (Defendant Dart, in His Official Capacity)

140.    Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

141.    By the actions described above, the CCSO took adverse employment actions against Plaintiff and intentionally discriminated against her the basis of her age in violation of 775 ILCS 5/2-102.

142.    The CCSO's conduct was deliberate, intentional, and in reckless disregard of Plaintiff's civil rights.

WHEREFORE Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant, Thomas J. Dart, in his official capacity, that the Court enter an order finding that Defendant's use of the PAT to prevent correctional officers from transferring to Courts is discriminatory and unlawful and award actual damages to Plaintiff in amounts sufficient to fully and fairly compensate her for her injuries. The award should include compensation for Plaintiff's monetary damages, humiliation, mental anguish, and other emotional distress, and reasonable attorney's fees and costs and expenses, including expert witness fees.

<u>**COUNT XVII**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRISS**
**(Defendant Dart, in His Official Capacity)**

143.    Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

144.    By the actions described above, Defendant intentionally used the PAT despite its known adverse impact on women, African Americans, and deputy sheriffs over the age of 40 and deliberately and knowingly used it to deny Plaintiff a position as a courthouse deputy and to return her back to the CCDOC.

145.    Defendant's conduct was extreme and outrageous.

146.    Defendant intended to inflict, and did inflict, severe emotional distress on Plaintiff. In the alternative, Defendant knew there was a high probability that its conduct would inflict severe emotional distress upon Plaintiff.

147.    As a direct and proximate result, Plaintiff has suffered severe emotional distress.

WHEREFORE, Plaintiff respectfully prays that judgment be entered in her favor and against the Defendant and that damages be awarded in an amount sufficient to fully and fairly compensate her for her injuries.

## INDEMNIFICATION
### (Defendant Cook County)

148.    Plaintiff restates, realleges, and incorporates the allegations above as if fully set forth fully herein.

149.    Because the CCSO is funded by the County and the Sheriff is an independently elected county officer sued here in his official capacity, under Illinois law Cook County has a duty to indemnify Defendant Dart against damages, including attorney's fees, recovered by Plaintiff by judgment or settlement of this action.

## JURY DEMAND

150.    Plaintiff demands a jury trial on all jury issues


Dated: November 2, 2020                    Respectfully Submitted,


                                          /s/ *Marni Willenson*
                                          One of the attorneys for Plaintiff

Marni Willenson
marni@willensonlaw.com
WILLENSON LAW, LLC
3420 W. Armitage, Suite 6200
Chicago, IL 60647
(312) 508-5380