# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|                                              |   |                          |
|----------------------------------------------|---|--------------------------|
| DENISE HOBBS                                 | ) |                          |
|                                              | ) |                          |
| *Plaintiff*,                                 | ) | No. 20 C 6513            |
|                                              | ) |                          |
| v.                                           | ) | Judge Virginia M. Kendall |
|                                              | ) |                          |
| THOMAS J. DART, Sheriff of                   | ) |                          |
| Cook County, in his official capacity,       | ) |                          |
| and COOK COUNTY, ILLINOIS,                   | ) |                          |
|                                              | ) |                          |
| *Defendants*.                                | ) |                          |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Sheriff Thomas J. Dart and Cook County Motion to Dismiss Plaintiff Denise Hobbs's Complaint. (Dkt. 12). Plaintiff brings claims against Sheriff Dart and Cook County for discrimination alleging that the County Sheriff's Office's use of a physical fitness test called the "Physical Abilities Test" or "PAT" had an adverse impact based on race, sex, and age. Presently, Plaintiff is a named class representative in *Howard v. Dart et al.*, Case No. 17-cv-8146, which is before Judge Kennelly. *Howard* pertains to allegations that Hobbs and other members of the class were subjected to sexual harassment on a daily basis while working at the Cook County Jail and the George N. Leighton Criminal Courthouse. Defendants now move to dismiss on two grounds. First, they move that Plaintiff's present case should be dismissed on the basis of claim-splitting because she could have brought her allegations in *Howard*. Second, Defendants argue Plaintiff has failed to state a claim under Title VII, 42 U.S.C. § 2000e; the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102; the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5(a)(2); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a); or

1

for Intentional Infliction of Emotional Distress ("IIED"). For the reasons that follow, the Motion to Dismiss is denied, except the claim for IIED which is dismissed without prejudice.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The following factual allegations are taken from Hobbs's Complaint (Dkt. 1) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff is a 59-year-old African American woman who was formerly employed by Sheriff Thomas J. Dart as a sworn sheriff's deputy and state-certified peace officer, employed by the Cook County Sheriff's Office ("CCSO"). (Dkt. 1 ¶¶ 1, 13). In April 2007, the CCSO hired Plaintiff to train as a correctional officer, and she entered the CCSO's correctional officer training academy. (*Id.* ¶ 14). She successfully completed all training requirements, passed the deputy sheriff state exam, and graduated from training as a correctional officer in July 2007. (*Id.*). From July 2007 until June 2019, Plaintiff was assigned to the Cook County Department of Corrections ("CCDOC"), where her duties as a correctional officer revolved around the security and safety of detainees at the Cook County Jail. (*Id.* ¶ 15). In February 2019, Plaintiff applied for a transfer from the CCDOC to the CCSO's Court Services Division ("Courts"), to work as a courthouse deputy. (*Id.* ¶ 16). The right to transfer to Courts is governed by a collective bargaining agreement ("CBA"), wherein the right to transfer is based upon seniority. (*Id.* ¶ 17). On June 10, 2019, Plaintiff received notification that her application to transfer to Courts was accepted and she transferred to Courts on June 24, 2019. (*Id.* ¶ 18).

On June 24, 2019, Plaintiff began training with other deputy sheriffs transferring to Courts from the CCDOC. (*Id.* ¶ 19). In July 2019, instructors overseeing the training of deputy sheriffs transferring to Courts repeatedly administered a physical fitness test which CCSO refers to as the Physical Agility Test or "PAT." (*Id.* ¶ 20). The PAT is a three-event test consisting of sit ups, a bench press, and a timed 1.5-mile run but Plaintiff alleges these activities in no way resemble, relate to, or measure a deputy sheriff's ability to perform the job duties of a courthouse deputy. (*Id.* ¶ 22). The PAT has a statistically significant adverse impact on African Americans, women, and deputy sheriffs over the age of 40 because African Americans, women, and deputy sheriffs over the age of 40 are significantly more likely to fail the PAT. (*Id.* ¶¶ 23–24).

On August 1, 2019, the CCSO rescinded Plaintiff's transfer to Courts because she failed the PAT and she was returned to her former post at the Cook County Jail. (*Id.* ¶ 26). Plaintiff could not return to the Jail because she had been chronically subjected to a sexually hostile work environment resulting from the CCOS's acquiescence to extreme forms of sexual harassment by male detainees directed at Plaintiff and other women employed in the Jail. (*Id.* ¶ 27). Plaintiff could not return to work in that hostile environment without serious jeopardy to her physical and mental health. (*Id.* ¶ 29). Because the CCSO refused to permit Plaintiff to work in Courts, she determined that she had no option other than to retire from the CCSO and she retired on September 1, 2019. (*Id.*). Plaintiff alleges that the CCSO's conduct in relying on a discriminatory and invalid physical fitness test to fail Plaintiff and other deputy sheriffs from courthouse deputy training and return them to the CCDOC violated Title VII, the Age Discrimination in Employment Act, the Illinois Human Rights Act, and the Illinois Civil Rights Act, which collectively prohibit the use of employment tests that have an adverse impact based on race, sex, and age unless they are correlated with important job duties. (*Id.* ¶ 30).

When the CCSO used the PAT to reject deputy sheriffs from Courts, it knew that African Americans, women, and older deputy sheriffs were significantly more likely to fail constituting behavior that was deliberate, reckless, intentional, and indifferent to their civil rights. (*Id.* ¶ 31). Before the CCSO administered the PAT to Plaintiff and other deputy sheriffs transferring to Courts, an administrative law judge with the Illinois Labor Relations Board ("ILRB") issued an order affirming an arbitrator's finding that the CCSO's use of the PAT constituted an unfair labor practice under the CBA between the CCSO and Local 700 of the International Brotherhood of Teamsters. (*Id.* ¶ 32). On July 9, 2019, at a public meeting in Chicago, a panel of the ILRB adopted the ALJ's findings and orders, including the order that the CCSO must "cease and desist" from requiring correctional officers transferring to Courts "take or pass a PAT at any time." (*Id.* ¶ 32). However, the CCSO proceeded to require Plaintiff and other officers in the courthouse deputy class to take and pass the PAT in violation of that order. (*Id.*).

Plaintiff brings claims for Disparate Impact – Race Discrimination under Title VII, 42 U.S.C. § 2000e (Count I); Disparate Impact – Race Discrimination under the Illinois Human Rights Act, 775 ILCS 5/2-102 (Count II); Disparate Impact – Race Discrimination under the Illinois Civil Rights Act 740 ILCS 23/5(a)(1) (Count III); Disparate Treatment – Race Discrimination under Title VII, 42 U.S.C. § 2000e (Count IV); Disparate Treatment – Race Discrimination Illinois Human Right Act (Count V); Disparate Treatment – Race Discrimination Illinois Civil Rights Act (Count VI); Disparate Impact – Sex Discrimination under Title VII, 42 U.S.C. § 2000e (Count VII); Disparate Impact – Sex Discrimination Illinois Human Rights Act (Count VIII); Disparate Impact – Sex Discrimination Illinois Civil Rights Act (Count IX); Disparate Treatment – Sex Discrimination Title VII, 42 U.S.C. § 2000e (Count X); Disparate Treatment – Sex Discrimination Illinois Human Rights Act (Count XI); Disparate Treatment – Sex Discrimination Illinois Civil

Rights Act (Count XII); ADEA Disparate Impact – Age Discrimination, 29 U.S.C. § 623(a) (Count XIII); Disparate Impact – Age Discrimination Illinois Human Rights Act (Count XIV); Disparate Treatment – Age Discrimination ADEA, 29 USC § 623(a) (Count XV); Disparate Treatment – Age Discrimination Illinois Human Rights Act (Count XVI); Intentional Infliction of Emotional Distress (XVII).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). This means that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir.2010)).

## DISCUSSION

Defendants move to dismiss on several grounds. First, Defendants argue that Plaintiff's entire Complaint should be dismissed pursuant to the doctrine of claim splitting. They further argue that Plaintiff fails to allege facts sufficient to find that she suffered an adverse employment action under Title VII, IHRA, ICRA or ADEA; that Plaintiff fails to allege facts sufficient to

5

support a finding that Plaintiff was denied her transfer because of her race, sex or age; that CCSO's use of the PAT was consistent with business necessity; and finally that Plaintiff fails to allege a claim for IIED.

## I. The Doctrine of Claim Splitting

Defendants first argue that Plaintiff's claim is barred by the doctrine of claim splitting. Plaintiff is currently a named class member in a lawsuit before Judge Kennelly charging her former employers with subjecting her to sexual harassment daily while working at the Cook County Jail and the George N. Leighton Criminal Courthouse. The *Howard* plaintiffs allege that:

> In the period between July 1, 2015, and Jan. 20, 2016, there were more than 200 documented incidents at the Jail of male inmates exposing themselves or masturbating. (Exhibitionist masturbation by detainees is so prevalent that the detainees have a term for it: they call it "clapping.") During 2016, there were more than 350 documented incidents. In the first three months of 2017, there were more than 118 documented incidents. And these figures grossly underplay the pervasiveness of the problem—because they capture only the number of documented incidents, representing but a small fraction of the total number of incidents.

(Dkt. 12-1 ¶ 11.) Hobbs further individually alleges in *Howard* that she was personally "subjected to sexual harassment by male detainees, including indecent exposure; masturbation; threats of violence; sexual epithets, slurs, propositions, and catcalling; and lewd gestures." (*Id*. ¶ 35.) On November 28, 2017, Judge Kennelly entered a preliminary injunction. *Howard*, Dkt. 16. In August 2019, Judge Kennelly certified the case as a class action, naming Plaintiff as one of ten class representatives. *Howard*, Dkt. 222. The revised class certification order has been on appeal to the Seventh Circuit, but the appeal did not stay discovery in the district court, and the final deadline for nearly all fact discovery was March 31, 2021. *Howard*, Dkt. 312; *CCSO v. Howard*, Appeal No. 20-1723, Dkt. 9. Defendants argue that the claims in *Howard* overlap with the claims made here so that the doctrine of claim splitting would preclude the instant case.

6

The law on claim-splitting is part of the law of *res judicata*. *See Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011); *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008). The rule against claim splitting prohibits a plaintiff from bringing a new case raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the first litigation. *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*, 953 F.3d 998, 1002 (7th Cir. 2020); *see also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir.1988) (discussing that under the rule against claim-splitting, a plaintiff must allege in one proceeding all claims for relief arising out of a single nucleus of operative facts, or be precluded from raising those claims in the future). Claim preclusion only prevents parties from re-litigating claims that were or could have been litigated during an earlier proceeding. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir.2012) (internal citations omitted). It does not operate to preclude a second suit that is based on a claim that could not have been asserted in the first suit. *Alvear–Velez*, 540 F.3d at 678.

Defendants ignore that *Howard* is a class-action lawsuit. Generally, claim preclusion does not apply to class action lawsuits, although this more commonly applies to unnamed class members. *See e.g. Makor Issues & Rights v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill.2009); *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 415 (N.D. Ill. 2012). Defendants argue that the recent case of *Ware v. Ill. Dep't of Corr.*, 827 Fed. Appx. 579, 581 (7th Cir. 2020) states that there the plaintiff's "position as a putative class representative [in his first case] and as the sole plaintiff [in a subsequent action] satisfies the party identity requirement of claim preclusion."

However, even if that were so, Plaintiff could not have brought the claims at issue here in *Howard* and they do not arise out of the same operative facts. To determine whether claims in two

7

suits share an "identity" for purposes of federal claim preclusion, the key question is not the legal theory advanced, but instead whether the two suits arise out of "a common core of operative facts." *Ware*, 827 Fed. Appx. at 582 (citing *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016). In *Howard*, Hobbs and the other class members allege sexual harassment by inmates between July 1, 2015, and Jan. 20, 2016. *Howard* itself was filed in November 2017, almost two years before Plaintiff even transferred to Courts in June 2019. It would have been extremely difficult for Plaintiff to amend the class complaint in *Howard* to include her allegations of age, race, and gender discrimination as a result of the PAT because the alleged adverse employment action did not occur until August 1, 2019. (Dkt. 1 ¶ 26). There is little overlap between the claims made in *Howard* and the claims made by Plaintiff here besides the fact that Plaintiff was uncomfortable transferring back to the Cook County Jail because of her alleged previous experiences being sexually harassed by inmates, as discussed in *Howard*. This does not constitute arising out of the same operative facts. The Motion to Dismiss because of claim splitting is denied.

    **II.**    **Failure to State a Claim**

        **A. Failure to Plead Adverse Employment Action under Title VII, IHRA, ICRA or ADEA**

Defendants next claim that Plaintiff has failed to plead an adverse employment action in order to maintain a racial discrimination disparate treatment claim under Title VII, IHRA, ICRA or ADEA. *See Fields v. Bd. of Educ.*, 928 F.3d 622, 625 (7th Cir. 2019). Defendants claim that Plaintiff has not sufficiently pled that the denial of her transfer was an adverse employment action. The "purpose of the adverse employment action requirement is to provide a reasonable limiting principle for the type of conduct actionable under the statute." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). An adverse employment action must be one that "materially alters the terms and conditions of employment." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir.

8

2001)). A "cognizable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 838 (7th Cir. 2008). Additionally, courts consider whether the plaintiff has "been disciplined, demoted, or terminated; has ... been denied wage or employee benefit increases or been given less opportunity for such increases; or has ... had her job responsibilities reduced or been made to perform more menial tasks." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir. 2001) (cleaned up). Under the above standard, "not everything that makes an employee unhappy is an actionable adverse action." *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff has pled sufficiently that the denial of her transfer was an adverse employment action. First, Plaintiff has pled that the that working conditions in the Jail were intolerable, that she was subject to sexual harassment while working there, and that her doctor advised her not to return to the Jail. (Dkt. 1 ¶¶ 27–29). Defendants cite to the Complaint in *Howard* to indicate that the conditions at the Courts were also intolerable because Plaintiff was also sexually harassed there, and that therefore the denial of her transfer was not adverse since essentially, she would be sexually harassed no matter where she worked. First, the Court's duty at the motion to dismiss stage is to look at the pleadings before it and to accept the well-pleaded allegations. *See Smoke Shop, LLC*, 761 F.3d at 785. The Court can take judicial notice of the *Howard* Complaint, but again, the allegations at issue in *Howard* and the present Complaint are from completely distinct time periods and contain different facts. Second, attempting to argue that a female employee would be sexually harassed no matter if she transferred jobs, and that her transfer would not be an improvement because it could only be the same sexual harassment is, frankly, a grim argument.

9

Finally, Plaintiff has additionally pled that the job duties of correctional officers and Courts deputies are different enough that CCSO runs a six-week Training Academy for officers transferring to Courts, (Dkt. 1 ¶¶ 14, 36–56); that Courts deputies and CCDOC correctional officers have different jobs titles, work sites, working conditions, work schedules, wages, and benefits, (*id.* ¶¶ 15, 16, 41); and that presumably this transfer was desirable enough that employees bid for the transfer based upon seniority. (*Id.* ¶¶16–19). Plaintiff has plausibly alleged that the termination of her transfer to Courts was an adverse employment action.

Defendants argue that even if Plaintiff's transfer denial was an adverse action, she fails to allege facts sufficient to find that she was constructively discharged from her position as a correctional officer. To establish a constructive discharge claim, a plaintiff "must not only demonstrate that a hostile work environment existed but also that the abusive working environment was so intolerable that [plaintiff's] resignation was an appropriate response." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293 (7th Cir. 2004) (internal quotations omitted) (quoting *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004)). Plaintiff here has pled that her resignation was the appropriate response. Plaintiff pleads that

> As a correctional officer in the Jail, Plaintiff was forced to endure a work environment permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive and so consistently traumatizing as to make the Jail an objectively abusive and hostile workplace for Plaintiff. Plaintiff could not return to work in that sexually hostile environment without serious jeopardy to her physical and mental health. Her physician adamantly opposed her return to the Jail. The working conditions in the Jail, and specifically the sexually hostile work environment resulting from CCSO's acquiescence in detainee sexual harassment, were intolerable. Because the CCSO refused to permit Plaintiff to work in Courts, she determined that she has no option other than to retire from the CCSO. She retired on September 1, 2019.

(Dkt. 1 ¶¶ 28–29). Plaintiff's Complaint plausibly alleges that once her transfer was denied and she returned to work as a correctional officer in the Jail, the working conditions were so intolerable

that she had no choice but to resign. Defendants' Motion to Dismiss Plaintiff's claim on this ground is denied.

### B. Failure to Allege Facts That Plaintiff was Denied Her Transfer Because of Her Race, Sex or Age

Defendants next argue that Plaintiff fails to allege that she was denied her transfer because of her race, sex, or age, and instead it was solely because she failed the PAT. To state a claim for disparate treatment, "a plaintiff must allege that an employer "took job-related action against him which was motivated by intentional discrimination." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). Defendants point out that "standing virtually alone, statistics cannot establish a Title VII case of individual disparate treatment." (Dkt. 12 at 11 (citing *Allen v. Bake-Line Products*, 98 C 1119, 2001 WL 1249054, *4 (N.D. Ill. Oct. 16, 2001)). This is because Title VII is not a "general civility code" meant to remedy all workplace conflicts, but only those conflicts that are motivated by discrimination. *Smith v. Ill. Dep't. of Transp.*, 936 F.3d 554, 561 (7th Cir. 2019). To show discriminatory purpose "…means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected 'a particular course of action at least in part 'because of'…its adverse effects upon an identifiable group." *Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 645 (7th Cir. 2001)). "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

Defendants seek to have Plaintiff show evidence that there was a discriminatory intent. While cases at the summary judgment stage have stated that statistics are not sufficient on their

11

own, the pleading standard is more generous. The general principle is that the pleading standards for Title VII claims are "undemanding" and allegations of discriminatory motivation do not need to be all that specific to survive a motion to dismiss. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (describing the minimal pleading standard for simple claims of race or sex discrimination).

Plaintiff has pled that the PAT has an adverse impact based on race, sex, and age, (Dkt. 1 ¶¶23–25, 53); that CCSO knew of the PAT's discriminatory effects but continued to use it even though it does not have any bearing on the job duties of a courthouse deputy, (*id*. ¶ 31); that despite knowing its discriminatory effects, CCSO failed to conduct any scientifically acceptable job analysis to justify its use, (*id*. ¶ 69); that CCSO persisted even after the ILRB issued an order that the stopped, (*id*. ¶ 32); and that the CCSO's human resources even admitted that the 1.5 mile run test was unnecessary. (*Id*. ¶ 54). Such allegations suffice at the motion to dismiss stage to state a plausible disparate impact claim on race, sex, and age.

### C. The CCSO's Use of the PAT Was Proper

Defendants next argue that the CCSO use of the PAT was consistent with business necessity. However, while it will prove relevant at later stages, such a defense is not appropriate at the motion to dismiss stage. A Plaintiff must establish a *prima facie* case of discrimination on the pleadings, yet the evidentiary burden a Title VII plaintiff must eventually meet to prevail differs from the pleading standards for a motion to dismiss. *See e.g. Sroga v. City of Chicago*, 18 CV 1749, 2019 WL 5208870, *5 (N.D. Ill. Oct. 16, 2019) (citing *Wyss v. Compact Indus., Inc*., No. 13 C 5135, 2014 WL 960846, at *2 (N.D. Ill. Mar. 12, 2014)); *Vega v. Chicago Park Dist*., 958 F.Supp.2d 943, 953 (N.D. Ill. 2013). At the pleading stage where the requirements to plead discrimination are minimal, "[d]isparate-impact plaintiffs are permitted to rely on a variety of

statistical methods and comparisons to support their claims. At the pleading stage, some basic allegations of this sort will suffice." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1007 (7th Cir. 2019); *see also Tate*, 809 F.3d at 356; *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019). Defendants' cited cases about proving a legitimate business necessity all take place beyond the motion to dismiss stage. (Dkt. 12 at 12–13). Determining whether Defendants had a legitimate business purpose is a fact-intensive question that the Court cannot resolve on the pleadings without the benefit of discovery. *Chaidez*, 937 F.3d at 1007.

### D. Intentional Infliction of Emotional Distress

Finally, Defendants move to dismiss because Plaintiff has failed to plead a claim for IIED and because Plaintiff's IIED claim is pre-empted by the Illinois Human Rights Act ("IHRA"). The IHRA preempts civil rights violations and some torts related to civil rights violations. *See Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017). To determine whether a tort is barred by the IHRA, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the Human Rights Act." *Id*. (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (1997); *Geise v. Phoenix Co. of Chicago*, 639 N.E.2d 1273, 1277 (1994)). The Seventh Circuit has emphasized that the preemption test "rest[s] on an examination of legal duties, not on the factual" overlap between the claims. *Richards*, 869 F.3d at 564 (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 603 n.4 (7th Cir. 2006).

"'[D]iscrimination and intentional infliction of emotional distress are different wrongs,' and so torts that do not depend on a civil rights violation are not preempted." *Naeem*, 444 F.3d at 604 (citing *Sanglap v. LaSalle Bank FSB*, 345 F.3d 515, 519 (7th Cir. 2003)). The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that

the defendant allegedly breached: "that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish[ ] the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Id.* (citing *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir.2000)).

To prevail on an IIED claim, the plaintiff must prove the following three elements: (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress. *Naeem*, 444 F.3d at 605; *McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988)). Whether conduct is extreme and outrageous is determined using an objective standard based upon all of the facts and circumstances present in a particular case. *See McGrath*, 533 N.E.2d at 811.

Plaintiff's Complaint and briefings make clear that the conduct described is solely predicated on her discrimination claims. In her Response brief, Plaintiff writes her IIED claim should prevail because "Plaintiff alleges that CCSO persisted in its use of a discriminatory PAT even though it: 1. knew the PAT was failing deputies based on age, race, and sex, 2. took no steps to analyze whether the test had any legitimate purpose, 3. persisted in using the PAT despite its human resources director recognizing the lack of a legitimate purpose; 4. persisted even after the ILRB announced that it constituted an unlawful labor practice; 5. refused to transfer Plaintiff even after her counsel explained why the PAT was unlawful and directed CCSO's attention to relevant legal authority; and 6. abruptly dropped the test—but only after plaintiff was forced to retire." (Dkt. 17 at 14–15). All of these arguments surround the alleged discriminatory use of the PAT, which already provides the basis for her age, sex, and race claims under the IHRA and therefore

14

the alleged conduct is not actionable outside of its character as a civil rights violation. *Naeem*, 444 F.3d at 604. Plaintiff's claim for IIED is therefore dismissed without prejudice.

## CONCLUSION

The Defendants' Motion to Dismiss (Dkt. 12) is granted in part and denied in part. Plaintiff's claims may proceed with the exception of Plaintiff's claim for Intentional Infliction of Emotional Distress, which is denied without prejudice. Hobbs may amend her Complaint consistent with this Opinion, if possible, within 21 days of its issuance.

Virginia M. Kendall
United States District Judge

Date: May 12, 2021